# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Early A. Atterberry, (M06143), | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No. 16 C 3063 |
| v. | ) | |
| | ) | Judge Charles R. Norgle |
| Jeff Korte, Warden, | ) | |
| Western Illinois Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Early A. Atterberry, a prisoner confined at the Dixon Correctional Center, brings this *pro se* habeas corpus action pursuant to 28 U.S.C. § 2254 challenging his aggravated criminal sexual abuse, and criminal sexual assault convictions from the Circuit Court for the Twelfth Judicial Circuit Court, Will County, Illinois. For the reasons set forth below, the Court denies the petition on the merits.

**1. Petitioner's State Court Proceedings and Habeas Corpus Petition Claims**

Petitioner was convicted of sexually abusing his 13-year-old daughter. *Illinois v. Atterberry*, 2011 IL App (3d) 090505-U, 2011 WL 10457943, at *1 (Ill. App. Ct. Sept. 21, 2011). He had sex with her on ten different occasions, and inappropriately touched her chest and vagina beneath her clothes ten other times in 2007. *Id.* The victim testified at trial that Petitioner assaulted her when other family members were out of the home, or at night when everyone else was sleeping. *Id.* She ultimately reported the abuse to her mother and other family members. *Id.* The mother reported the abuse to the police. *Id.*

The mother also testified at trial. *Id.* She explained that the victim's behavior changed during the time period when the assaults occurred. *Id.* The victim became more withdrawn, dressed in layers before going to bed, and slept in her mother's room at times. *Id.*

Following a jury trial, Petitioner was convicted of criminal sexual assault, and aggravated criminal sexual abuse. *Id.* at *2. The court imposed a ten-year sentence for the criminal sexual assault, and a consecutive five-year sentence for the aggravated criminal sexual abuse. *Id.*

On direct appeal in the Appellate Court of Illinois, Petitioner argued that the trial court erred in admitting an uncharged 2005 event to show his propensity to commit sex offenses under Section 115-7.3 of Illinois's Code of Criminal Procedure (725 ILCS 5/115-7.3) because his conduct did not constitute a criminal offense.[1] (Dkt. 7-7, pg. 40.) He also argued that the jury should have received a limiting instruction regarding this evidence. *Id.* at 43-44.

The state appellate court found that introduction of the evidence was error, but the error was harmless. *Atterberry*, 2011 IL App (3d) 090505-U, 2011 WL 10457943, at *2-*3. The appellate court also found that Petitioner's attorney failed to request a limiting instruction at trial, and Petitioner failed to raise the issue in his post-trial motion. *Id.* at *3. Consequently, the appellate court reviewed the limiting instruction issue under plain error standard because the issue was not properly preserved. *Id.* The appellate court concluded that trial counsel's failure to seek a limiting instruction did not constitute plain error. *Id.* at *4.

---

1 "Generally, evidence of a defendant's other offenses, crimes or bad acts are inadmissible for the purpose of showing a defendant's disposition or propensity to commit crimes." *Atterberry*, 2011 IL App (3d) 090505-U, 2011 WL 10457943, at *2-*3 (citing *Illinois v. Illgen*, 583 N.E.3d 515 (Ill. 1991)). "However, this type of evidence is admissible under [725 ILCS 5/115-7.3] to show a defendant's propensity to commit certain sex offenses." *Atterberry*, 2011 IL App (3d) 090505-U, 2011 WL 10457943, at *3 (citing 725 ILCS 5/115-7.3).

Petitioner filed a petition for leave to appeal (PLA) in the Supreme Court of Illinois arguing that the appellate court misapplied the harmless error standard. (Dkt. 7-1, pgs. 17-20.) The PLA did not raise trial counsel's failure to request a limiting instruction. *Id.* The Supreme Court of Illinois denied Petitioner's PLA. *Illinois v. Atterberry*, No. 113223, 963 N.E.2d 247 (Ill. Jan. 25, 2012) (Table).

Petitioner then filed a postconviction petition under Illinois's Post-Conviction Hearing Act, 725 ILCS 5/122-1, *et seq.*, raising ineffective assistance of trial and appellate counsel, prosecutorial misconduct, judicial misconduct, and sufficiency of the evidence claims. (Dkt. 7-3, pgs. 19-46.) The trial court denied Petitioner's postconviction petition. (Dkt. 7-3, pgs. 47-51.)

Petitioner's postconviction appeal to the Appellate Court of Illinois was limited to a single issue of judicial bias. (Dkt. 7-7, pg. 86.) Petitioner argued that the trial court judge's bias against him was demonstrated by a prior ruling by the same judge in an unrelated case against a different Defendant named Weber in 2004. *Id.* at 89. In Weber's 2004 case, the trial judge had excluded the introduction of prior bad act evidence regarding the sexual abuse of two girls. *Id.* Petitioner argued that the fact that the trial judge excluded the prior bad act evidence in Weber's case, while admitting it in his case, demonstrated judicial bias. *Id.* at 91.

The appellate court held the judicial bias claim was not raised in the postconviction petition, but instead was asserted improperly for the first time on appeal. *Illinois v. Atterberry*, No. 2015 IL App (3d) 130456-U, 2015 WL 2028270, at *2 (Ill. App. Ct. Apr. 28, 2015). The appellate court also ruled that, *assuming arguendo*, even if the postconviction petition could be read to raise the judicial bias claim, that claim would be barred by forfeiture because Petitioner was required to raise this claim on direct appeal. *Id.*

3

Petitioner then brought a PLA in the Supreme Court of Illinois raising his judicial bias claim. (Dkt. 7-1, pgs. 44-54.) The Supreme Court of Illinois denied Petitioner's PLA. *Illinois v. Atterberry*, 39 N.E.3d 1004 (Ill. Sept. 30, 2015) (Table). Petitioner filed the present habeas corpus petition in this Court following completion of his state postconviction proceedings.

Petitioner raises five[2] claims in the present habeas corpus petition:

Claim One: The prosecution made inflammatory opening and closing jury statements that were based on wrongfully admitted evidence, and failed to disclose witness background, depriving the jury of the ability to evaluate witness credibility.

Claim Two: Ineffective assistance of trial counsel for failing to: (a) properly investigate Petitioner's background resulting in counsel failing to present a defense at trial; (b) object to the prosecutor's leading questions of the victim; (c) properly investigate the charge; (d) call witnesses on Petitioner's witness list; (e) interview witnesses subpoenaed for trial; (f) discuss the "pros and cons" of Petitioner's case while it was pending; and, (g) investigate the prosecutor's witnesses for credibility purposes.

Claim Three: The trial court erred by: (a) allowing the introduction of other crime evidence against Petitioner; (b) refusing to allow the introduction of police reports regarding the victim; (c) allowing the prosecution to introduce fabricated evidence that resulted in Petitioner's conviction; and (d) failing to remove Jurors 51 and 254 during voir dire.

Claim Four: The prosecution failed to disclose information regarding witness Tomeka Atterberry when she allegedly gave Petitioner's mother's name when stopped by the police at a traffic stop.

Claim Five: The state appellate court erred in its application of the harmless error standard.

---

2 Respondent labeled his Claims One through Five in his habeas corpus petition. Respondent's answer relabeled the Claims A through F. The Court follows the labeling system used by Petitioner. For the reader's convenience, the Court notes that Petitioner's Claim One corresponds with Claim A in Respondent's Answer, Claim Two to Claim B, Claim Three to Claims D and E, Claim Four to Claim C, and Claim Five to Claim F.

## 2. Analysis of Petitioner's Claims

Respondent argues that Petitioner's claims are procedurally defaulted. "To obtain federal habeas review, a state prisoner must first submit his claim through one full round of state-court review." *Johnson v. Hulett*, 574 F.3d 428, 431 (7th Cir. 2009) (citing *Picard v. Connor*, 404 U.S. 270, 275-76 (1971)); *see also* 28 U.S.C. § 2254(b)(1). The prisoner must present the operative facts and controlling law of the claim before the state courts so that they have a meaningful opportunity to consider the claim before it is raised in federal court. *Anderson v. Benik*, 471 F.3d 811, 814 (7th Cir. 2006) (citations omitted). Petitioner must raise the claim through all levels of the Illinois courts, including in a petition for leave to appeal (PLA) before the Supreme Court of Illinois. *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-46 (1999)). Failure to properly preserve a claim results in procedural default.

### a. Claim One

In Claim One, Petitioner alleges that the prosecutor made improper opening and closing statements to the jury based on wrongfully admitted evidence, and failed to disclose witness background depriving the jury of the ability to evaluate witness credibility. Respondent is correct, this claim is procedurally defaulted because Petitioner failed to raise it before the state courts.

The Court recognizes that Petitioner argues, among other grounds in this claim, that the prosecutor made improper arguments based on wrongfully admitted evidence. The habeas corpus petition does not detail what evidence Petitioner believes was wrongfully admitted evidence --- in specific, Petitioner does not allege that this is the same wrongfully admitted evidence addressed in the state direct appeal regarding the 2005 incident. Regardless, even if it is the same challenged

5

evidence from the 2005 incident that was addressed by the state court on direct appeal, that would not help Petitioner avoid procedural default. Fair presentment requires informing the state court of both the operative facts *and* controlling legal principles. *Malone v. Walls*, 538 F.3d 744, 753 (7th Cir. 2008). At no time did Petitioner present the controlling legal principles of a prosecutorial misconduct claim to the state courts. Petitioner limited his claim on direct appeal to the evidentiary issue of the wrongful introduction of the 2005 incident, and his attorney's failure to seek a limiting jury instruction. Petitioner failed to preserve the relevant issues in Claim One before the state courts. Claim One is procedurally defaulted.

### b. Claim Two

In Claim Two, Petitioner raises multiple grounds of ineffective assistance of trial counsel. Petitioner raised several of these arguments in his postconviction petition before the state trial court. (Dkt. 7-3, pgs. 23-25.) However, Petitioner abandoned these claims by failing to raise them in his postconviction appeal. That results in procedural default because Petitioner was required to present his claim through all levels of state court review, including in his PLA. *Boerckel*, 526 U.S. at 842-46. Claim Two is procedurally defaulted.

### c. Claims Three and Five

In Claim Three, Petitioner argues that the trial court erred by: (a) allowing the introduction of other crime evidence regarding the 2005 incident against him; (b) refusing to allow the introduction of police reports regarding the victim; (c) allowing the prosecution to introduced fabricated evidence that resulted in his conviction; (d) failing to remove Jurors 51 and 254 during voir dire; and (e) judicial bias as demonstrated by the Court's ruling in Weber's trial in comparison to Petitioner's. In Claim Five, Petitioner argues that the state appellate court misapplied the

harmless error standard when finding the introduction of the evidence of the 2005 incident was harmless.

Claims 3(a) and Five regarding the introduction of the other crime evidence relating to the 2005 incident, and the harmless error issue, were properly preserved on direct appeal. However, the remaining parts of the Claim Three --- 3(b), 3(c), 3(d), 3(e) --- are procedurally defaulted. Claims 3(b), 3(c), and 3(d) are defaulted because Petitioner never raised them in the state courts.

Claim 3(e) of judicial bias based on the trial court's prior ruling in Weber's case is procedurally default because the state appellate court held that Petitioner wrongfully attempted to raise the claim in the first instance on appeal. This is an adequate and independent ground of decision resulting in procedural default. *Crockett v. Butler*, 807 F.3d 160, 167 (7th Cir. 2015). Beyond the default, Claim 3(e) is meritless. *Thomas v. Reese*, 787 F.3d 845, 849 (7th Cir. 2015) ("Adverse rulings do not constitute evidence of judicial bias.") (citations omitted).

Despite being preserved, Claims 3(a) and Five are denied on the merits. As to Claim 3(a), the Court cannot review the state evidentiary ruling because "'habeas corpus relief does not lie for errors of state law.'" *Estelle v. McQuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffres*, 497 U.S. 764, 780 (1990)). Claim 3(a)'s challenge to the introduction of the 2005 other crime evidence raises a question of state law, and so it is denied on the merits.

It is true that evidentiary errors do result in a federal constitutional violation when the error "'so infused the trial with unfairness as to deny due process of law.'" *Estelle*, 502 U.S. at 75 (quoting *Lisenba v. California*, 314 U.S. 219, 228 (1941)). However, a federal due process claim must be properly preserved in the state court, and presented in the habeas corpus petition. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). Setting aside that Petitioner did not raise the federal

due process claim before this Court, he also did not raise it before the state court. Thus, any due process claim would be procedurally defaulted.

Finally, for completeness purposes, even if Petitioner had preserved the due process claim, it would still be meritless. The evidentiary error at issue of the wrongful admission of the 2005 incident did not so infuse the trial with unfairness as to deny Petitioner due process of law. The victim testified against Petitioner at trial, and her account was corroborated by her mother. The victim's testimony is more than sufficient to demonstrate that there was no due process violation in this case. *See Woods v. Schwartz*, 589 F.3d 368, 377 (7th Cir. 2009) ("[I]t is black letter law that testimony of a single eyewitness suffices for a conviction even if 20 bishops testify that the eyewitness is a liar.").

Turning to Claim Five, Petitioner argues that the state appellate court on direct appeal applied the wrong harmless error standard. The state court held that the introduction of the 2005 incident was error, but concluded the error was harmless. *Atterberry*, 2011 IL App (3d) 090505-U, 2011 WL 10457943, at *2-*3. In conducting its harmless error analysis, the state appellate court explained that, "the burden is on the State to prove that the error was not 'so substantial that it undermines our confidence in the jury verdict.'" *Atterberry*, 2011 IL App (3d) 090505-U, 2011 WL 10457943, at *3 (quoting *Illinois v. Johnson*, 842 N.E.2d 714, 724 (Ill. 2005)). Petitioner took issue with this formulation of the harmless error standard, arguing in his PLA following the appellate court ruling that "evidentiary errors, like those that have occurred in this case, can be labeled 'harmless' only if the properly admitted evidence is so overwhelming that no fair-minded jury could reasonably have voted to acquit the defendant, or if the record affirmatively shows that the error was not prejudicial." (Dkt. 7-1, pg. 17) (citations omitted).

The Court need not resolve whether the appellate court's formulation of the harmless error was incorrect because the matter does not implicate an issue of federal law. Illinois applies two distinct harmless error rules --- one for nonconstitutional errors (like the evidentiary error in this case), and the other for constitutional errors. *In re E.H.*, 863 N.E.2d 231, 235 (Ill. 2006). State courts must follow the *Chapman v. California*, 386 U.S. 18 (1967), harmless error standard for review of constitutional errors, and the state court's application of the *Chapman* standard is a cognizable claim in a habeas corpus proceeding. *Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015). Unlike in *Chapman*, the harmless error standard for nonconstitutional errors is not mandated by the Constitution. For example, the harmless error standard for nonconstitutional errors in federal criminal cases is established by statute, 28 U.S.C. § 2111.

Illinois has chosen as a matter of state law to establish its own harmless error standard for nonconstitutional errors. Petitioner challenges the state court's application of the harmless error standard on a nonconstitutional issue of introduction of evidence. But, that dispute is of no moment as the issue involves a question of state law. As previously mentioned, a federal court has no authority to reexamine an alleged misapplication of state law. *Estelle*, 502 U.S. at 67.

Finally, for completeness purposes, even if the Court could reach the harmless error issue, Petitioner would not be entitled to relief. Regardless of the harmless error standard applied (be it the standard argued for by Petitioner in his PLA, the standard applied by the state court, or the *Chapman* standard), the Court would conclude that any error in the application of the state evidentiary rule was harmless. As mentioned above, both the victim testified to the abuse, and the mother testified in support of the victim's account. Claim Five is denied on the merits.

#### d. Claim Four

In Claim Four, Petitioner alleges prosecutorial misconduct based on the alleged failure to disclose to Petitioner information regarding the victim's mother. The mother allegedly gave a false name to the police (Petitioner's mother's name) instead of her actual name during a traffic stop. This claim was not raised in the state courts. Claim Four is procedurally defaulted.

#### e. Cause and Prejudice, and Fundamental Miscarriage of Justice

Petitioner cannot excuse his defaulted claims under either the cause and prejudice, or fundamental miscarriage of justice standards. Respondent raised the procedural default argument in his answer. (Dkt. 6.) Petitioner was given an opportunity to file a reply (in which he could have responded to the procedural default arguments). (Dkt. 13.) Petitioner failed to file his reply. Thus, he forfeited his response to the procedural default. *United States ex rel. Bell v. Pierson*, 267 F.3d 544, 555 n.6 (7th Cir. 2001). For completeness purposes, the Court also notes that even if the forfeiture was forgiven, Petitioner could not excuse his defaults under either cause and prejudice, or fundamental miscarriage of justice.

Regarding cause and prejudice, cause is an "'objective factor, external to [Petitioner] that impeded his efforts to raise the claim in an earlier proceeding.'" *Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013) (quoting *Smith v. McKee*, 596 F.3d 374, 382 (7th Cir. 2010)). Examples of cause include: (1) interference by officials making compliance impractical; (2) the factual or legal basis was not reasonably available to counsel; or, (3) ineffective assistance of counsel. *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (citing *McCleskey v. Zant*, 499 U.S. 467 (1991)). The record does not suggest any possible ground for application of the cause and prejudice standard.

This leaves Petitioner with the fundamental miscarriage of justice (actual innocence) gateway to excuse his default. To show actual innocence to defeat a default, Petitioner must demonstrate that "'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggins v. Perkins*, 133 S. Ct. 1924, 1928 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). This is a "demanding" and "seldom met" standard. *McQuiggins*, 133 S. Ct. at 1928 (citing *House v. Bell*, 547 U.S. 518, 538 (2006)). Petitioner must present new, reliable evidence that was not presented at trial --- such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence --- to make a credible claim of actual innocence. *House*, 547 U.S. at 537 (citing *Schlup*, 513 U.S. at 324); *see McDonald v. Lemke*, 737 F.3d 476, 483-84 (7th Cir. 2013) (quoting *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) ("[A]dequate evidence is 'documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who places him out of the city, with credit card slips, photographs, and phone logs to back up the claim.'")). There is nothing in the record to demonstrate actual innocence. Petitioner argues that the victim and her mother are lying. However, the jury chose to believe the victim and her mother, and there is no new, reliable evidence to suggest that Petitioner is actually innocent. Petitioner cannot excuse is his procedural defaults under either the cause and prejudice, or fundamental miscarriage of justice standard. The habeas corpus petition is denied on the merits.

### f. Certificate of Appealability and Notice of Appeal Rights

The Court declines to issue a certificate of appealability. Petitioner cannot make a substantial showing of the denial of a constitutional right, or that reasonable jurists would debate, much less disagree, with this Court's resolution of Petitioner's claims. *Arredondo v. Huibregtse*,

542 F.3d 1155, 1165 (7th Cir. 2008) (citing 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).

Petitioner is advised that this is a final decision ending his case in this Court. If Petitioner wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Petitioner need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if Petitioner wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

### 3. Conclusion

Petitioner's habeas corpus petition (Dkt. 1.) is denied on the merits. Any pending motions are denied as moot. The Court declines to issue a certificate of appealability. The Clerk is instructed to: (1) terminate Respondent Jeff Korte from the docket; (2) add John Varga, Warden, Dixon Correctional Center as Respondent; (3) alter the case caption to *Atterberry v. Varga*; and,

(4) enter a judgment in favor of Respondent and against Petitioner.    Civil Case Terminated.

ENTERED:

Dated: 11-9-17

_____
CHARLES R. NORGLE
United States District Judge